**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Derrick EDWARDS, Appellant**

**No. 436 EDA 2015**

Superior Court of Pennsylvania.

Submitted February 21, 2017

Filed January 19, 2018

---

Damian M. Sammons, Philadelphia, for appellant.

Lawrence J. Goode, Assistant District Attorney, and Anthony V. Pomeranz, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: OLSON, STABILE AND MUSMANNO, JJ.

OPINION BY OLSON, J.:

Appellant, Derrick Edwards, appeals from the judgment of sentence entered on January 9, 2015. On appeal, Appellant raises several objections, including, *inter alia*, challenges to the sufficiency of the evidence and allegations that the Commonwealth harbored racial animus in the use of its peremptory strikes. Although we hold that listing the races and genders of prospective jurors on a peremptory strike sheet, while ill-advised, does not *per se* violate the Equal Protection Clause of the Fourteenth Amendment as interpreted by ***Batson v. Kentucky***, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), we conclude that, under the totality of circumstances, Appellant demonstrated a ***Batson*** violation by showing that the Commonwealth struck at least one juror with discriminatory intent. Accordingly, we vacate Appellant's judgment of sentence and remand for a new trial.

The factual background of this case is as follows. At approximately 5:50 a.m. on September 18, 2012, Appellant and Rasheed Thomas ("Thomas") robbed Keith Crawford ("Crawford") at gunpoint. Approximately five minutes later, Appellant and Thomas approached Kevin Cunningham ("Cunningham") as he waited at a bus stop. Appellant put a firearm in Cunningham's face and said, "You know what this is." When Cunningham did not lie down on the ground, Appellant pushed him to the ground and struck him twice in the back of the head with the firearm. Appellant and Thomas took Cunningham's cash, a set of barber clippers, a Bible, an engagement ring, and a cellular telephone.

At approximately 2:00 a.m. on October 1, 2012, two African–American males approached Whitney Coates ("Coates"). One of the males pointed a firearm at her face and said "You know what it is." Coates gave the assailants her cellular telephone. Approximately 30 minutes later, Appellant and Thomas attempted to rob Donald Coke ("Coke") at gunpoint. When Coke resisted, Appellant shot him twice in the left arm. Appellant and Thomas then fled in an SUV driven by Henry Bayard ("Bayard"). The SUV belonged to Bayard's mother.

Approximately 15 minutes later, Appellant and Bayard robbed Duquan Crump ("Crump") at gunpoint. They fled the scene with Crump's wallet, cellular telephone, and watch. Approximately 15 minutes later, Appellant and Thomas robbed Shanice Jones ("Jones") at gunpoint. They fled with Jones' wallet and cellular telephone. Approximately 15 minutes later, two African–American males approached Hector De Jesus ("De Jesus"). One of the males pointed a firearm at him and ordered him to hand over his belongings. The assailants took $150.00, an iPod touch, a wallet, and a backpack containing clothes and a taser.

Approximately 45 minutes later, an African–American male exited a vehicle and pointed a firearm at Jonas Floyd ("Floyd"). Another African–American male then exited the vehicle. The assailants took Floyd's tote bag, headphones, cellular telephone, wallet, keys, and United States currency. Shortly after this robbery, police located Appellant, Thomas, and Bayard inside the SUV that belonged to Bayard's mother. In addition to the firearms used in the robberies, police recovered a significant amount of the goods stolen from the eight victims listed above.

The relevant procedural history of this case is as follows. On November 2, 2012, the police charged Appellant *via* eight criminal complaints with various offenses relating to the robberies described above. A preliminary hearing was held on February 26, 2013. At the conclusion of that hearing, Appellant was held for court on all charges. On March 6, 2013, the Commonwealth charged Appellant *via* eight criminal informations with essentially the same crimes as those charged in the criminal complaints.

On October 13 and 14, 2014, Appellant moved to quash the criminal informations. In those motions to quash, Appellant argued that the evidence presented at the preliminary hearing was insufficient to make out *prima facie* cases against him. On October 27, 2014, the trial court denied the motions to quash.

Jury selection began on October 28, 2014. Prior to jury selection, Appellant asked the trial court how it conducted voir dire. The trial court responded that it would ask prospective jurors questions and the attorneys would not be permitted to make inquiries. Appellant did not object to this procedure. The trial court's staff placed the race and gender of each prospective juror on the juror strike sheet prior to handing the sheet to counsel. Appellant objected to this process and the

trial court overruled the objection. Once the parties exercised their respective peremptory strikes, Appellant, pursuant to *Batson*, objected to the Commonwealth striking four prospective African–American jurors.[1] The trial court determined that the Commonwealth exercised its strikes in a non-prejudicial manner and overruled Appellant's objection.

Appellant's trial commenced on October 29, 2014.[2] At trial, Thomas appeared as a witness for the prosecution but he refused to identify his co-conspirators. The Commonwealth, therefore, sought permission to read Thomas' confession into the record. Appellant objected and the trial court overruled that objection. The Commonwealth also presented an audio recording of Appellant from prison. Appellant objected to the admission of the recording and the trial court overruled that objection.

On November 4, 2014, the jury found Appellant guilty of eight counts of robbery,[3] eight counts of conspiracy to commit robbery,[4] eight counts of carrying a firearm without a license,[5] eight counts of carrying a firearm on the streets of Philadelphia,[6] eight counts of possessing an instrument of crime,[7] attempted murder,[8] aggravated assault,[9] and conspiracy to commit aggravated assault.[10]

Over six weeks later, on December 22, 2014, Appellant moved for a mistrial. In

---

1. With its eight peremptory challenges, the Commonwealth struck seven prospective African–American jurors. Appellant objected to the Commonwealth striking four of the seven prospective jurors. It is unclear why Appellant did not challenge the Commonwealth's peremptory strikes of the other three prospective African–American jurors.

2. On September 22, 2014, Thomas pled guilty to multiple counts each of robbery, conspiracy to commit robbery, and carrying a firearm without a license. Thus, he did not go to trial as Appellant's co-defendant.

3. 18 Pa.C.S.A. § 3701(a)(1)(ii).

4. 18 Pa.C.S.A. §§ 903, 3701.

5. 18 Pa.C.S.A. § 6106(a)(1).

6. 18 Pa.C.S.A. § 6108.

7. 18 Pa.C.S.A. § 907(a).

8. 18 Pa.C.S.A. § 901, 2502.

9. 18 Pa.C.S.A. § 2702(a)(1).

10. 18 Pa.C.S.A. §§ 903, 2702.

that motion, based upon the statements of two American Sign Language interpreters present during jury deliberations, Appellant averred that jurors conducted research about the case during deliberations. The trial court denied the motion that same day. On January 9, 2015, the trial court sentenced Appellant to an aggregate term of 22 to 44 years' imprisonment. This timely appeal followed.

On April 6, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). Appellant failed to file a timely concise statement and, on October 7, 2015, this Court remanded this case to the trial court to permit Appellant to file a *nunc pro tunc* concise statement. On October 28, 2015, Appellant filed his concise statement. On February 24, 2016, the trial court issued its Rule 1925(a) opinion. This case is now ripe for disposition.

Appellant raises several issues for our review, *inter alia*: [11]

1. Did the trial court commit an error of law and/or abuse its discretion in failing to issue a judgment of acquittal[?]

2. Did the trial court commit an error of law and/or abuse its discretion in failing to quash the return of the magistrate's transcript ... where the Commonwealth failed to present material witnesses at a preliminary hearing or supplement a devoid record prior to trial?

3. Did the trial court commit an error of law and/or abuse its discretion in denying Appellant's *Batson* [ ] motion by denoting on its jury sheet the race and gender of each potential juror and allowing the prosecution to strike jurors on the basis of race?

Appellant's Brief at 5–6 (certain capitalization omitted).[12]

■■■■ In his first issue Appellant argues that the evidence presented at trial as to four of the robberies was insufficient. "The determination of whether sufficient evidence exists to support the verdict is a question of law; accordingly, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Johnson*, ── Pa. ──, 160 A.3d 127, 136 (2017) (citation omitted). In assessing Appellant's sufficiency challenge, we must determine "whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Grays*, 167 A.3d 793, 806 (Pa. Super. 2017) (citation omitted). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.... [T]he finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence." *Commonwealth v. Waugaman*,

11. We address Appellant's first two issues because he would be entitled to discharge if we granted relief on those claims. We address Appellant's third issue because we conclude that he is entitled to relief on that claim. As we remand for a new trial, we decline to address Appellant's remaining issues which would only entitle him, at most, to a new trial. *See Drew v. Work*, 95 A.3d 324, 338 (Pa. Super. 2014) (citation omitted).

Our dissenting colleague similarly declines to address Appellant's remaining issues because of our disposition of this appeal. Thus, he merely states that he would reach a different conclusion on Appellant's *Batson* claim. *See Dissenting Opinion*, at 979 n.1.

12. We have re-numbered the issues for ease of disposition.

167 A.3d 153, 155–156 (Pa. Super. 2017) (citation omitted).

▮▮▮ Appellant contends that the evidence was insufficient to convict him of crimes related to the Jones, Crump, and Crawford robberies because those three victims failed to appear and did not testify at trial. Appellant concedes, however, that the property stolen from these three victims was found in the SUV occupied by Appellant, Thomas, and Bayard. *See* Appellant's Brief at 20. Moreover, as noted above, Thomas' confession was read to the jury at trial.[13] *See* N.T., 10/28/14, at 28–77. In that confession, Thomas implicated Appellant in the robberies of Jones, Crump, and Crawford. Moreover, Appellant stipulated at trial that he did not possess a valid license to carry firearms at the time the robberies occurred. N.T., 11/3/14, at 40. Combined, this stipulation, Thomas' confession, and the recovery of items taken during the robberies from the SUV occupied by Appellant constituted sufficient evidence for the jury to conclude that Appellant committed those three robberies and offenses related to those incidents.

Appellant also argues that the evidence was insufficient to convict him of robbing Coke because Coke did not testify at trial. Once again, however, Thomas implicated Appellant in Coke's robbery. Furthermore, Coke's robbery followed the same modus operandi of the other robberies. *See Commonwealth v. Cullen*, 340 Pa.Super. 233, 489 A.2d 929, 936 (1985) (modus operandi of serial robber can be used to prove identity). Combined, the stipulation that Appellant did not possess a valid license to carry

firearms, Thomas' statement, and the similarity of the robberies in this case provided sufficient evidence to convict Appellant of robbing Coke and the related offenses.

▮▮▮ In his second issue, Appellant argues that the trial court erred in denying his motions to quash because there was insufficient evidence presented at the preliminary hearing to hold him for trial. This issue is moot. "If events occur to eliminate the claim or controversy at any stage in the process, the [issue] becomes moot." *In re S.H.*, 71 A.3d 973, 976 (Pa. Super. 2013) (citation omitted). Our Supreme Court has held that "once a defendant has gone to trial and has been found guilty of the crime or crimes charged, any defect in the preliminary hearing is rendered immaterial." *Commonwealth v. Sanchez*, 623 Pa. 253, 82 A.3d 943, 984 (2013) (citation omitted). Accordingly, Appellant's second issue is moot.

▮▮▮ In his third issue, Appellant argues that the jury selection process in this case violated *Batson*. First, he contends that the trial court violated *Batson* as a matter of law by listing the races and genders of potential jurors on the peremptory strike sheet.[14] Second, he argues that the Commonwealth violated *Batson* by striking four African–American members of the venire. "A *Batson* claim presents mixed questions of law and fact." *Riley v. Taylor*, 277 F.3d 261, 277 (3d Cir. 2001) (*en banc*). Therefore, our standard of review is whether the trial court's legal conclusions are correct and whether its factual findings are clearly erroneous.

---

**13.** We explicitly decline to opine upon whether the trial court properly admitted Thomas' confession into evidence because, when considering the sufficiency of the evidence, we must consider both properly and improperly admitted evidence. *Commonwealth v. Kane*, 10 A.3d 327, 332 (Pa. Super. 2010), *appeal denied*, 612 Pa. 689, 29 A.2d 796 (2011).

**14.** As noted above, the trial court's staff placed the races and genders of potential jurors on the strike list. The trial court was unaware of its tipstaff's practice. Nonetheless, for simplicity, we refer to the trial court when discussing its tipstaff's actions.

■ "In *Batson*, the [Supreme Court of the United States] held that a prosecutor's challenge to potential jurors solely on the basis of race violates the Equal Protection Clause of the United States Constitution." *Commonwealth v. Reid*, 627 Pa. 151, 99 A.3d 470, 484 (2014) (citation omitted). When a defendant makes a *Batson* challenge during jury selection:

> First, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.

*Commonwealth v. Watkins*, 630 Pa. 652, 108 A.3d 692, 708 (2014) (citation omitted).

■ Initially, we consider whether Appellant properly preserved his *Batson* claim for appellate review. *Cf.* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). The Commonwealth argues that Appellant "waived this claim by failing to set forth the race of: all the impaneled jurors, all of the venirepersons the Commonwealth struck, and all the venirepersons acceptable to the Commonwealth whom he struck." Commonwealth's Brief at 17–18, *citing Commonwealth v. Thompson*, 106 A.3d 742, 752 (Pa. Super. 2014); *see Commonwealth v. Spence*, 534 Pa. 233, 627 A.2d 1176, 1182 (1993).[15] The Commonwealth fails to acknowledge, however, that this information was included on the peremptory strike sheet used by the parties. As noted above, the peremptory strike sheet included the race and gender of every prospective juror. It also included codes indicating which party (if either) objected to a juror and whether that objection was for cause or was a peremptory strike. Finally, it specifies the racial composition of the jury seated for trial. Appellant cited the peremptory strike sheet when making his *Batson* challenge. Therefore, Appellant's failure to repeat orally the information during his *Batson* challenge did not waive his *Batson* claim.[16]

■ Turning to the merits of Appellant's *Batson* claim, we first address his argument that listing the races and genders of prospective jurors on the peremptory strike sheet violated *Batson* as a matter of law. Although we find the trial

15. In *Spence*, our Supreme Court held that the objecting party must include the following information in its objection in order to preserve a *Batson* claim: the race of the stricken prospective juror(s), the race of prospective juror(s) acceptable to the striking party but stricken by the objecting party, and the racial composition of the jury seated for trial. *Spence*, 627 A.2d at 1182; *see Thompson*, 106 A.3d at 752. The United States Court of Appeals for the Third Circuit has held that the requirements set forth in *Spence* are an unreasonable application of federal law. *See Holloway v. Horn*, 355 F.3d 707, 728–729 (3d Cir. 2004). Nonetheless, our Supreme Court has refused to modify these requirements. *See Commonwealth v. Fletcher*, 580 Pa. 403, 861 A.2d 898, 910 n.15 (2004). We, of course, are

"duty-bound to effectuate [our Supreme] Court's decisional law." *Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 610 Pa. 371, 20 A.3d 468, 480 (2011) (citations omitted).

16. Neither the Commonwealth nor our learned colleague in his dissent cite to any additional information required by *Spence* that the trial court would have gained if Appellant repeated orally the information contained on the strike sheet. Instead, the dissent and the Commonwealth place the form of the information over the substance. *Cf. Commonwealth v. Farrow*, 168 A.3d 207, 219 (Pa. Super. 2017) (This Court's intent is not to "elevate form over substance.").

court's practice both ill-advised and inappropriate, there are compelling grounds for refusing to adopt a *per se* rule that precludes this practice under *Batson*. First, there is no precedent for such a holding. Appellant is unable to cite a single case from any jurisdiction which holds that this practice is a *per se* violation of *Batson*.

Second, adoption of a *per se* rule runs counter to the rationale of *Batson*, and that of several cases interpreting and applying the decision, all of which have encouraged courts to consider all relevant factors. *Batson*, 476 U.S. at 96, 106 S.Ct. 1712 ("[T]he defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race."); *see Carrillo v. Texas*, 2007 WL 2052070, *3 (Tex. App. July 19, 2007) ("[T]he *Batson* decision is one of fact, not of *per se* rules of law."); *Louisiana v. Duncan*, 802 So.2d 533, 550 (La. 2001) (internal quotation marks and citation omitted) ("[A]ttempts to fashion absolute, *per se* rules are inconsistent with *Batson* in which the [Supreme Court of the United States] instructed trial courts to consider all relevant circumstances."); *United States v. Grandison*, 885 F.2d 143, 147 (4th Cir. 1989), *quoting United States v. Sangineto–Miranda*, 859 F.2d 1501, 1521 (6th Cir. 1988) ("The Supreme Court's mandate in *Batson* to consider all the facts and circumstances means that we cannot lay down clear rules[.]"); *see also Miller–El v. Dretke*, 545 U.S. 231, 247 n.6, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) ("A *per se* rule that a defendant cannot win a *Batson* claim unless there is an exactly

identical white juror [unaffected by the challenged practice] would leave *Batson* inoperable; potential jurors are not products of a set of cookie cutters."). Accordingly, although we do not countenance the practice, we hold that listing the races and genders of potential jurors on the peremptory strike sheet did not violate *Batson* as a matter of law.

 Having determined that listing the race and gender of prospective jurors does not constitute a *per se Batson* violation, we turn to a specific analysis of Appellant's *Batson* claim. As noted above, the first step in the *Batson* analysis is determining whether Appellant made "a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race[.]" *Watkins*, 108 A.3d at 708 (citation omitted). As our Supreme Court has explained:

> To establish a *prima facie* case of purposeful discrimination[,] the defendant must show that he is a member of a cognizable racial group, that the prosecutor exercised a peremptory challenge or challenges to remove from the venire members of the defendant's race; and that other relevant circumstances combine to raise an inference that the prosecutor removed the juror(s) for racial reasons.

*Commonwealth v. Cook*, 597 Pa. 572, 952 A.2d 594, 602 (2008) (internal alterations, ellipsis, footnote, and citation omitted).

 We agree with the trial court's conclusion that Appellant established a *prima facie* case of purposeful discrimination.[17] Appellant is African–American and

17. Our learned colleague disagrees with our characterization of the trial court's conclusion that the first prong of the *Batson* test was met. According to our dissenting colleague, the trial court never found that Appellant

established a *prima facie* case of purposeful discrimination. Although the trial court did not use the magic words *"prima facie* case of purposeful discrimination,"* it is evident by the trial court's words and actions that it

the Commonwealth struck seven African–American prospective jurors. ·Furthermore, although listing the races and gender of prospective jurors on the peremptory strike sheet did not qualify as·a *per se* **Batson** violation, it is a relevant circumstance that raised an inference that the prosecutor struck the jurors based on their race. Therefore, we agree with the trial court that Appellant established a *prima facie* case of purposeful discrimination.

◼ The second step in the **Batson** analysis is the determination of whether the Commonwealth .provided race-neutral explanations for striking the prospective jurors. **Watkins**, 108 A.3d at 708 (citation omitted). As our Supreme Court explained:

> The second prong of the **Batson** test, involving the prosecution's obligation to come forward with a race-neutral explanation of the challenges once a *prima facie* case is proven, does not demand an explanation that is persuasive, or even plausible. Rather, the issue at that stage is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

**Commonwealth v. Harris**, 572 Pa. 489, 817 A.2d 1033, 1043 (2002) (internal quotation marks and citations omitted).

◼ Here again, we agree with the trial court's conclusion that the Commonwealth proffered race-neutral explanations for striking the four African–American jurors in question. The Commonwealth stated that it struck Jurors 56 and 57 because

made this finding. The trial court considered whether the second step of the **Batson** test was met which it would not have done had it found that Appellant failed to establish the first step. Moreover, as our dissenting colleague notes, even if the trial court failed to make this finding, "we may turn directly to the question of whether the appellant ,had

they were talking to each other and.joking throughout the voir dire process. N.T., 10/28/14, at 93. The Commonwealth also stated that Juror 56 was nodding and making faces while the trial court discussed the credibility of police officers. *Id.* The Commonwealth stated that.it struck Juror 61· because she didn't identify the neigh-borhood ,in which she lived on the juror questionnaire and. her ex-husband was a police officer. *Id.* Finally, the Commonwealth stated that it struck Juror 67 ,because:

> when .she was being questioned by [the trial court] she was leaning back, seemed a little cavalier, had her arm resting on the back and, while we were conducting voir dire in the back, she was sitting there with her arms crossed and her head kind of nodded, seemed guarded and again as if she didn't want to be here, so I didn't think she would be a fair and competent juror.

*Id.* at 94. All of these reasons are facially acceptable. Accordingly, we agree with the trial court that the Commonwealth offered race-neutral reasons for striking the four African–Americans in question.

◼ The third step in a **Batson** analysis involves determining if the defense carried its burden of proving purposeful discrimination. **Watkins**, 108 A.3d at 708 (citation omitted). "It is at this stage that the persuasiveness of the facially-neutral explanation proffered by the ·Commonwealth is relevant." **Commonwealth v. Towles**, 630 Pa. 183, 106 A.3d 591, 601 (2014) (citation omitted).[18]

carried his burden of proving that the prose-cution had struck the juror based on race." **Dissenting Opinion**, at 981 (internal quotation marks omitted), *quoting* **Commonwealth v. Sanchez**, 614 Pa. 1, 36 A.3d 24, 45 (2011).

18. The Commonwealth cites **Cook** and **Commonwealth v. Washington**, 592 Pa. 698, 927

In this case, the trial court did not make an explicit determination during voir dire that Appellant failed to prove purposeful discrimination. *See* N.T., 10/28/14, at 94. The trial court's denial of Appellant's *Batson* challenge, along with the reasoning in its Rule 1925(a) opinion, *see* Trial Court Opinion, 2/24/16, at 19, indicates that the trial court implicitly found that Appellant failed to prove purposeful discrimination. As our Supreme Court explained, a

> trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal and will not be overturned unless clearly erroneous. Such great deference is necessary because a reviewing court, which analyzes only the transcripts from voir dire, is not as well positioned as the trial court is to make credibility determinations. Moreover, there will seldom be much evidence on the decisive question of whether the race-neutral explanation for a peremptory challenge should be believed; the best evidence often will be

the demeanor of the prosecutor who exercises the challenge.

*Commonwealth v. Williams*, 602 Pa. 360, 980 A.2d 510, 531 (2009) (internal quotation marks and citation omitted).

Although we must exercise great deference in reviewing the trial court's factual finding with respect to discriminatory intent, we do not function as a rubber stamp. *Cf. Foster v. Chatman*, —— U.S. ——, 136 S.Ct. 1737, 1747–1755, 195 L.Ed.2d 1 (2016) (even under Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA's") double deferential standard of review, the trial court's factual finding with respect to discriminatory intent was clearly erroneous); *Commonwealth v. Monahan*, 860 A.2d 180, 185 (Pa. Super. 2004), *appeal denied*, 583 Pa. 688, 878 A.2d 863 (Pa. 2005) (In the context of a discretionary aspects of sentencing claim, in which we employ a highly deferential standard of review, we do not act as a rubber stamp.). In this case, the evidence establishes that the Commonwealth struck Juror 67 with discriminatory intent; therefore, we conclude that the trial court's factual finding was clearly erroneous.[19]

A.2d 586 (2007), for the proposition that a *Batson* claim fails whenever the prosecution states race-neutral reasons for disputed peremptory challenges, even if the proffered explanation lacks persuasive force or plausibility. *See* Commonwealth's Brief at 18. In essence, the Commonwealth argues that the defense cannot prevail where the Commonwealth satisfies the second step of the *Batson* inquiry. This argument is inconsistent with prevailing jurisprudence. Every case from the Supreme Court of the United States and our Supreme Court interpreting *Batson* requires the trial court to proceed to the third step of the *Batson* inquiry if the defendant demonstrates a *prima facie* case of discrimination and the prosecutor provides a race-neutral explanation. *E.g.*, *Miller–El*, 545 U.S. at 239–240, 125 S.Ct. 2317; *Purkett v. Elem*, 514 U.S. 765, 769, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (*per curiam*) ("The prosecutor's proffered explanation ... is race neutral and satisfies the

prosecution's step two burden of articulating a nondiscriminatory reason for the strike....: Thus, the inquiry properly proceeded to step three, where the state court found that the prosecutor was not motivated by discriminatory intent."); *Commonwealth v. Roney*, 622 Pa. 1, 79 A.3d 595, 619 (2013) (citation omitted) ("If a race-neutral explanation is tendered, the trial court must then proceed to the third prong of the test[.]"); *Cook*, 952 A.2d at 611.

19. In this case, Appellant did not attempt to rebut the Commonwealth's race-neutral explanations. He also did not withdraw his *Batson* challenge. Instead, Appellant believed that the reasons offered by the Commonwealth were so unpersuasive that he did not need to offer argument as to why the race-neutral explanations were pretextual. As the Supreme Court of Mississippi explained, a defendant

We find three factors strongly indicative of discriminatory intent in this case; first, as noted above, the identification of the race and gender of the potential jurors on the peremptory strike sheet.[20] Although this was not a *per se Batson* violation, when combined with the other factors listed below it supports an inference of racial discrimination. Second, the probability of the Commonwealth striking such a disproportionate number of African–Americans by chance is extremely low. Finally, the Commonwealth's race-neutral explanation for striking Juror 67 was wholly underpersuasive in that the Commonwealth relied on her supposedly inattentive posture to conclude that she would not discharge her duties as a juror in a fair and impartial manner.

During the peremptory strike process, 30 potential jurors were considered by the parties. Of those 30, 13 were African–American. The Commonwealth used seven of its eight peremptory strikes on African–Americans. An additional 14 potential jurors were Caucasian. The Commonwealth did not strike any of the Caucasian potential jurors. Finally, three of the potential jurors were neither Caucasian nor African–American. The Commonwealth exercised its last peremptory strike on one of those three individuals.

■ It does not take a statistician to understand that the probability of striking no Caucasians and striking at least 7 of 13 African–Americans by random chance is extremely small. Statistics alone are insufficient to prove discriminatory intent. *Commonwealth v. Johnson*, 635 Pa. 665, 139 A.3d 1257, 1282–1283 (2016) (citations omitted). Statistics can be used, however, when considering the totality of the circumstances to determine if the Commonwealth exercised its peremptory strikes in a discriminatory manner. *See Commonwealth v. Ligons*, 601 Pa. 103, 971 A.2d 1125, 1144 (2009).

The statistics in this case are startling. Unlike many cases addressed by our Supreme Court, in this case the Commonwealth exercised all eight of its peremptory strikes on racial minorities and seven of those eight on African–Americans. *See* Pa. R.Crim.P. 633, 634 (setting forth the number of peremptory strikes that the Commonwealth may exercise); *cf. Johnson*,

is not procedurally barred from contesting the [prosecutor's] strikes of [] jurors for whom he did not provide rebuttal during the *Batson* hearing. Although the defendant **may** provide rebuttal, *Batson* does not **require** the opponent of a peremptory strike to rebut the [other party's] proffered race-neutral basis. Under *Batson*'s three-step procedure, once the [prosecutor] has presented race-neutral reasons to rebut the defendant's *prima facie* case, the trial court should determine whether the defendant has established purposeful discrimination. *Corrothers v. Mississippi*, 148 So.3d 278, 345–346 (Miss. 2014) (emphasis in original), *citing Batson*, 476 U.S. at 97–98, 106 S.Ct. 1712; *see Colorado v. O'Shaughnessy*, 275 P.3d 687, 694 (Colo. App. 2010), *aff'd*, 269 P.3d 1233 (Colo. 2012) (citations omitted). Moreover, the Commonwealth does not cite, nor are we aware of, any decisions from our

Supreme Court or this Court requiring such rebuttal. *Cf. Missouri v. Jones*, 471 S.W.3d 331, 334 (Mo. App. 2015) (Missouri requires such rebuttal in order to make a *Batson* challenge). We decline to adopt such a requirement in this case.

20. The dissent asserts that the Commonwealth is not responsible for the trial court's actions in placing the race and gender of each prospective juror on the preemptory strike sheet. Although this is accurate, we note that when Appellant objected to having this information noted on the strike sheet, the Commonwealth objected to Appellant's objection. *See* N.T., 10/28/14, at 91. Moreover, the trial court's listing of the potential jurors' races and genders on the strike sheet is a part of the totality of the circumstances that we must evaluate when reviewing the trial court's *Batson* ruling.

139 A.3d at 1281–1283 (Commonwealth struck seven African–Americans and seven non-African–Americans and did not exercise all of its peremptory challenges); *Commonwealth v. Roney*, 622 Pa. 1, 79 A.3d 595, 620–621 (2013) (Commonwealth struck four Caucasians); *Commonwealth v. Hutchinson*, 611 Pa. 280, 25 A.3d 277, 287 (2011) (Commonwealth struck eight Caucasians); *Ligons*, 971 A.2d at 1143–1144 (Commonwealth struck two Caucasians and did not exercise eight or nine of its peremptory strikes [21]). Although the Commonwealth could not completely purge the jury in this case of African–Americans because of the number of African–American members of the venire, the Commonwealth greatly reduced the number of African–Americans on the jury in this case by exercising all of its peremptory strikes and using seven of those eight strikes on African–Americans. These probabilities, combined with the identification of the potential jurors' races and genders on the peremptory strike sheet and the proffered, but highly implausible, race-neutral explanation for striking Juror 67, cause us to conclude that Appellant met his burden in demonstrating that the Commonwealth struck Juror 67 with discriminatory intent.

■ Finally, the most important factor when considering the totality of the circumstances is the race explanation offered by the Commonwealth. We focus on the Commonwealth's race-neutral explanation for striking Juror 67, which is reproduced in full *supra*. Essentially, the Commonwealth stated that it struck Juror 67 because she did not seem pleased to be called to jury duty. Although, as noted above, this was a facially race-neutral explanation, this same rationale could be used to strike almost every potential juror in almost every case tried throughout Pennsylvania. Few (if any) citizens are thrilled when they receive a jury summons in the mail. Instead, they begrudgingly arrive at the courthouse to fulfill their civic duty (or avoid being arrested). The trial court acknowledged this reality twice during the jury selection process in this case. N.T., 10/28/14, at 5, 52.

The Commonwealth also stated that Juror 67 was leaning back in her chair with her arms crossed during the voir dire process. This, however, was encouraged by the trial court at the beginning of jury selection. *Id.* at 4 ("So sit back and relax"). There is no assertion that she was disruptive, that she ignored the trial court's instructions, or that she exhibited outward or palpable disinclination to discharge her duties as an impartial factfinder.

We find instructive the Supreme Court of the United States' decision in *Snyder v. Louisiana*, 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008). In *Snyder*, the prosecutor struck a prospective African–American juror because he appeared nervous and because of concerns regarding his student teaching position. The trial court contacted his college dean and alleviated any concerns regarding his student teaching duties. Nonetheless, the trial court overruled the defendant's *Batson* challenge and the state appellate courts affirmed. Justice Alito, writing for a seven-member majority, concluded that the trial court's factual finding on discriminatory intent was clearly erroneous. *Id.* at 484–485, 128 S.Ct. 1203. Instead, considering the totality of the circumstances, the majority found the prosecution's explanation for striking the prospective juror highly implausible and, therefore, pretextual. *See id.*; *see also Miller–El*, 537 U.S. at 339,

---

21. At one point, our Supreme Court referenced the Commonwealth not using eight of its preemptory strikes while at another point our Supreme Court referenced the Commonwealth not using nine of its preemptory strikes.

123 S.Ct. 1029, *quoting Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) *(per curiam )* (At the third "stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination."); *Commonwealth v. Garrett,* 456 Pa.Super. 60, 689 A.2d 912, 917 (1997), *appeal denied,* 549 Pa. 712, 701 A.2d 575 (Pa. 1997) (citation omitted) ("An explanation which at first blush appears to be clear, specific and legitimate may be exposed as a pretext for racial discrimination when considered in the light of the entire voir dire proceeding."); *Commonwealth v. Jackson,* 386 Pa.Super. 29, 562 A.2d 338, 350 (1989) *(en banc )* (Beck, J. opinion announcing the judgment of the court), *appeal denied,* 525 Pa. 631, 578 A.2d 926 (1990) (citation omitted) (same).[22]

In both *Snyder* and the case at bar the trial court did not make an explicit factual finding that it witnessed the alleged demeanor relied upon by the prosecutor to strike the juror. *See Snyder,* 552 U.S. at 477, 128 S.Ct. 1203 ("[T]he trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor.");[23] *see also* N.T., 10/28/14, at

**22.** Judges Del Sole and Montemuro joined Judge Beck's opinion. Judge Popovich joined the relevant portions discussed in this decision (and that of our dissenting colleague). President Judge Cirillo filed a concurring opinion in which Judge Brosky joined. That concurring opinion stated that, "I therefore concur only in the conclusion that appellant has failed to show an equal protection violation and in the affirmance of the judgment of sentence." *Jackson,* 562 A.2d at 358 (Cirillo, J. concurring). Judge Tamilia filed a concurring opinion in which he stated that, "I concur in the result[.]" *Id.* at 358 (Tamilia, J. concurring). Judge McEwen filed a dissenting opinion which Judge Johnson joined. Thus, only four of the nine members of the *en banc* panel in *Jackson* joined the relevant portions of Judge Beck's opinion. Hence, it is only an opinion announcing the judgment of the court. Such an opinion is not binding upon this panel. *See Commonwealth v. Gorbea-Lespier,* 66 A.3d 382, 387 n.5 (Pa. Super. 2013), *appeal denied,* 621 Pa. 693, 77 A.3d 1259 (2013) (citations omitted).

**23.** Our dissenting colleague argues that the Supreme Court of the United States rejected our reading of *Snyder* in *Thaler v. Haynes,* 559 U.S. 43, 130 S.Ct. 1171, 175 L.Ed.2d 1003 (2010) *(per curiam ). See Dissenting Opinion,* at 989–91. Our reading of *Snyder,* however, is consistent with *Thaler.* In *Thaler,* the Court explained that the failure of the *Snyder* trial court to note any personal recollection of the prospective juror's demeanor was only one factor it considered when determining that the trial court's factual finding was unsupported by the record. *See Thaler,* 559 U.S. at 48–49, 130 S.Ct. 1171. Unlike *Snyder,* which was on direct review, *Thaler* was a *habeas corpus* proceeding. Hence, the Supreme Court of the United States rejected the United States Court of Appeals for the Fifth Circuit's interpretation of *Snyder* as a *per se* rule requiring such recollection in order for a federal court to apply AEDPA deference to a state court decision. *See id.* at 49, 130 S.Ct. 1171; *see also Colorado v. Beauvais,* 393 P.3d 509, 518 (Colo. 2017) (explaining that *Thaler* rejected the Fifth Circuit's "broad characterization of *Snyder* as creating an express credibility finding requirement" while noting that "express credibility findings significantly aid effective appellate review"); *cf. Michigan v. Tennille,* 315 Mich.App. 51, 888 N.W.2d 278, 289–291 (2016) (holding that under *Snyder* and *Thaler* an appellate court must examine the totality of the circumstances when determining if a trial court's factual finding is supported by the record in absence of an explicit finding regarding a demeanor-based explanation from the prosecution.

We have likewise explicitly rejected *per se* rules in the *Batson* context. *See supra* at 971–72. As we have emphasized throughout this Opinion, it is not one factor that leads us to the conclusion that the trial court's factual finding is unsupported by the record. Instead, it is the totality of the circumstances, including the trial court's failure to note Juror 67's demeanor on the record, which leads us to

94; Trial Court Opinion, 2/24/16, at 19. Moreover, in both *Snyder* and the case at bar the race-neutral explanation offered by the prosecutor was highly implausible when considered in light of the totality of the circumstances surrounding the voir dire process.

It is for this reason that our dissenting colleague's argument that we are "substituting [our] judgment for that of the trial court," *Dissenting Opinion*, at 986, is flawed. Our dissenting colleague cites nothing in the record to indicate that the trial court observed Juror 67 and found that Juror 67's demeanor credibly exhibited the basis for the strike attributed to her by the Commonwealth.

Instead of relying on *Snyder*, which is binding precedent, our learned colleague relies on *Jackson*, which is not binding precedent for the reasons set forth above. Moreover, *Jackson* differs from the factual scenario in the case *sub judice*.

The extensive portion of Judge Beck's opinion quoted by our dissenting colleague did not address the third step of *Batson*. *See Dissenting Opinion*, at 987–88, *quoting Jackson*, 562 A.2d at 351 (Beck, J., opinion announcing the judgment of the court). Instead, this language came from Judge Beck's discussion of the second *Batson* step. *See Jackson*, 562 A.2d at 351 (Beck, J., opinion announcing the judgment of the court).[24] Judge Beck only reached the third *Batson* step with respect to jurors who were challenged because of their alleged familiarity with the location of the crime. *See id.* at 352–354. As noted above, we agree with the trial court, the Commonwealth, and our dissenting colleague that the Commonwealth's proffered rationale for striking Juror 67

satisfied the second step of *Batson*. Our disagreement is with the trial court's finding that Appellant failed to prove purposeful discrimination at step three of the *Batson* analysis.

Although Judge Beck did not reach the third *Batson* step in the portion of the opinion relied on by our dissenting colleague, she did reference it in her analysis of the second *Batson* step. Specifically, she stated that, "A trial judge should not uncritically accept [body language] or any other proffered explanation for a peremptory challenge. Instead, the judge should assess each proffered explanation in light of [his or] her independent recollection of the demeanor and responses of the venire panel members." *Id.* at 351. As noted above, in the case at bar the trial court failed to assess the Commonwealth's proffered explanation for striking Juror 67 in light of its independent recollection of Juror 67's demeanor and responses. Thus, this case is more akin to *Snyder* than to *Jackson*—in which the plurality failed to reach step three of the *Batson* test.

■ The persuasive value of the Commonwealth's explanation for striking Juror 67 is so low that, when combined with the other factors listed above, the totality of the circumstances indicates that the Commonwealth struck Juror 67 with discriminatory intent. The trial court's finding to the contrary was clearly erroneous. As such, we conclude that the Commonwealth violated the Equal Protection Clause of the Fourteenth Amendment as interpreted by *Batson*. As a *Batson* violation can never be harmless error, *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 734

---

this conclusion. *See Thaler*, 559 U.S. at 49, 130 S.Ct. 1171. Therefore, our decision to vacate Appellant's judgment of sentence is consistent with *Thaler*.

24. The defendant in *Jackson* only argued step two of *Batson* with respect to this prospective juror. He argued step three for other prospective jurors.

(2000), we vacate Appellant's judgment of sentence and remand for a new trial.

In sum, we conclude that there was sufficient evidence to convict Appellant at trial and Appellant's challenge to the denial of his motions to quash is moot. We conclude, however, that the Commonwealth's peremptory strike of Juror 67 was racially motivated and violated *Batson*. Accordingly, we vacate Appellant's judgment of sentence and remand for a new trial. As explained in note 11 *supra*, because we remand for a new trial we decline to address Appellant's remaining issues which would only entitle him to a new trial.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judge Musmanno joins this Opinion.

Judge Stabile files a Dissenting Opinion.

## DISSENTING OPINION

STABILE, J.

The Majority concludes the Commonwealth's peremptory strike of Juror 67 was racially motivated and violated *Batson*.[1] Consequently, the Majority would vacate Appellant's judgment of sentence and remand for a new trial. Because I disagree with the learned Majority's analysis of the *Batson* test, its rejection of the trial court's factual determinations, and find

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. The Majority explained that it addressed only three of the issues raised by Appellant and, because it found a *Batson* violation warranting a new trial, declined to address the remaining issues. Majority Opinion at 969 n. 11. Because the Majority vacates the judgment of sentence and remands for a new trial based on *Batson*, I likewise decline to address Appellant's remaining issues and express no opinion as to the merit of those issues.

3. *Harris* is one of the few cases since 2000 in which our Supreme Court considered a *Bat-*

other of our precedent persuasive, I respectfully dissent.[2]

In *Commonwealth v. Harris*, 572 Pa. 489, 817 A.2d 1033 (2002), our Supreme Court recognized:

*Batson* set forth a three-part test for examining a criminal defendant's claim that a prosecutor exercised peremptory challenges in a racially discriminatory manner: first, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.

*Id.* at 1042 (citations omitted).[3]

In the context of peremptory challenges, Pennsylvania law further requires the defendant, in his or her prima facie case, to make a record specifically identifying a) the race or gender of all venirepersons in the jury pools, b) the race or gender of all venirepersons remaining after challenges for cause, c) the race or gender of those removed by the prosecutor, and d) the race or gender of the jurors who served

*son* challenge on direct appeal. Others include *Commonwealth v. Towles*, 630 Pa. 183, 106 A.3d 591 (2014), involving challenges based on race and gender, and *Commonwealth v. Sanchez*, 614 Pa. 1, 36 A.3d 24 (2011), which will be discussed *infra*. The vast majority of the *Batson* cases decided by our Supreme Court in recent years involved appeals from the denial of a PCRA petition. *See, e.g., Commonwealth v. Watkins*, 630 Pa. 652, 108 A.3d 692 (2014) (Majority Opinion at 970–71); *Commonwealth v. Roney*, 622 Pa. 1, 79 A.3d 595 (2013), *infra*.

and the race or gender of jurors acceptable to the Commonwealth who were stricken by the defense. *Commonwealth v. Hill*, 727 A.2d 578, 582 (Pa. Super. 1999) (citing *Commonwealth v. Spence*, 534 Pa. 233, 627 A.2d 1176 (1993)). After such a record is established, the trial court must consider the totality of the circumstances to determine whether the defendant has made a prima facie case of purposeful discrimination. *Id.* (citing *Commonwealth v. Thomas*, 552 Pa. 621, 717 A.2d 468, 475 (1998) and *Commonwealth v. Rico*, 551 Pa. 526, 711 A.2d 990 (1998)).

In conducting its analysis, the Majority expressed its agreement with the trial court that Appellant satisfied the first prong of *Batson* by "establish[ing] a *prima facie* case of purposeful discrimination." Majority Opinion at 972. However, my review reveals that the trial court did not make any such determination either on the record or in its Rule 1925(a) opinion.

During voir dire proceedings, out of the presence of the jury, Appellant's counsel indicated he was "questioning" four strikes made by the prosecution. Notes of Testimony ("N.T."), Voir Dire Proceedings, 10/28/14, at 88. Discussion first centered on the fact the court crier listed the race and gender of potential jurors on the strike list. The trial court then stated:

> **Trial Court:** I'm trying to make a record here. And is number—are these jurors all white jurors?
>
> **Appellant's Counsel:** They are all African American jurors.
>
> **Trial Court:** These jurors are all African American jurors.

*Id.* at 92–93. The trial court proceeded to inquire into the strikes and found them to be race neutral. Defense counsel did nothing to establish a proper and complete record on the *prima facie* prong of the *Batson* test and the additional *prima facie* criteria required under Pennsylvania law. Likewise, other than setting out the three-pronged test in its Rule 1925(a) opinion, the trial court did not discuss the *prima facie* showing prong of *Batson*, instead commenting, "While counsel for Appellant challenged the Commonwealth's striking of four African–American venirepersons, this [c]ourt inquired into the strikes and found them to be race-neutral." Trial Court Rule 1925(a) Opinion, 2/24/16, at 18–19. I find no support in the record for the Majority's statement that the trial court determined Appellant satisfied the first prong of *Batson*.[4] As this Court explained in *Commonwealth. v. Thompson*, 106 A.3d 742 (Pa. Super. 2014):

> The requirements for a *prima facie Batson* showing are well settled.
>
>> Generally, in order ... to satisfy the first requirement of demonstrating a *prima facie Batson* claim, the movant must establish that he or she is a member of a cognizable racial group, that the opposing party exercised peremptory challenges to remove from the venire members of his or her race, and that other relevant circumstances combine to raise an inference that the opposing party removed the jurors for racial reasons. Whether the movant has carried this threshold burden of establishing a *prima facie* case should be determined in light of all the relevant circumstances.
>
> *Commonwealth v. Ligons*, 601 Pa. 103, 971 A.2d 1125, 1142 (2009).

---

4. I do find some inconsistency in the Majority concluding Appellant established a *prima facie* case of purposeful discrimination as evidenced by the trial court's words and actions, Majority Opinion at 972–73, while at the same time dismissing the trial court's words and actions wherein it found no discriminatory intent under the third prong of *Batson. See, infra.*

A showing that a number of strikes were used against venirepersons of one race will not, without more, create the inference necessary to establish a *prima facie Batson* claim. Rather, our Supreme Court has continually recognized that a moving party must preserve a "full and complete record of the asserted *Batson* violation, as it would otherwise be impossible to conduct meaningful appellate review of the motivations of prosecutors in individual cases without such a record." *Commonwealth v. Fletcher*, 580 Pa. 403, 861 A.2d 898, 909 (2004) (citation omitted), *cert. denied, Fletcher v. Pennsylvania*, 547 U.S. 1041, 126 S.Ct. 1617, 164 L.Ed.2d 336 (2006). "This full and complete record requirement necessitates that the movant make a record identifying the race of venirepersons stricken by the Commonwealth, the race of prospective jurors acceptable to the Commonwealth but stricken by the defense, and the racial composition of the final jury." *Id.* at 910 (citation, footnote, and internal quotation marks omitted). When a movant fails to make such a record, we cannot review the trial court's determination that a movant failed to establish a *prima facie* case under *Batson*. *Id.* at 909–910, *citing Commonwealth v. Holloway*, 559 Pa. 258, 739 A.2d 1039 (1999)).

*Id.* at 751–52 (some quotations, citations and brackets omitted). *See also Hill, supra.*

With respect to *Fletcher's* "full and complete record" requirement as detailed in *Hill*, it is only because the court clerk recorded the race of the venirepersons on the Strike List that there was any record of the race and gender of the jury pool, of those remaining, of those stricken by the Commonwealth, of jurors who served, and of those acceptable to the Commonwealth who were stricken by the defense. Strike List, 10/28/14. Clearly, Appellant did not make the required record. Further, the trial court did not make any determination that Appellant established a *prima facie* showing to satisfy the first prong of *Batson*. Therefore, there is no determination for this Court to review concerning the first prong.

Regardless, the trial court's failure to consider the *prima facie* showing prong of the *Batson* test does not present an impediment to this Court's review under *Batson*. Our Supreme Court addressed a similar situation in *Sanchez*, where the trial court likewise did not address the first prong of the *Batson* test either in court or in its Rule 1925(a) opinion, instead focusing on the second prong, *i.e.*, whether the Commonwealth's explanation of its peremptory strike was race-neutral. Although the Commonwealth challenged the finding of a *prima facie* showing in *Sanchez*, the Supreme Court announced it would not decide the issue of whether the appellant met his *prima facie* burden. Citing *Harris* and *Commonwealth v. Edwards*, 588 Pa. 151, 903 A.2d 1139, 1154 n. 16 (2006), the Court recognized that the United States Supreme Court has suggested that, under these circumstances, "we may turn directly 'to the question of whether the appellant had carried his burden of proving that the prosecution had struck the juror based on race.'" *Sanchez*, 36 A.3d at 45 (quoting *Edwards*, 903 A.2d at 1154 n. 16, in turn quoting *Hernandez v. New York*, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality)). The *Sanchez* Court proceeded to consider the second and third prongs of the test. I likewise shall proceed to the second and third prongs.

The second prong of the *Batson* test requires the prosecution to articulate a race-neutral explanation for striking the jurors. *See Harris*, 817 A.2d at 1043. I

agree with the Majority's analysis and conclusion that the Commonwealth did proffer race-neutral explanations for striking the four venirepersons in question. *See* Majority Opinion at 973. As our Supreme Court explained in *Harris*, at issue is the facial validity of the prosecutor's explanation and, absent inherent discriminatory intent in the explanation, the reasons offered will be deemed race neutral. *Harris*, 817 A.2d at 1043. The trial court accepted the prosecutor's explanations as race neutral. The Majority agrees and I concur in that conclusion.

The third prong of *Batson* requires that the trial court determine whether the defense has carried its burden of proving the Commonwealth engaged in purposeful discrimination. *See Harris*, 817 A.2d at 1042. It is well established that the evaluation of a prosecutor's intent for striking a juror is a credibility matter that lies "peculiarly within the trial judge's province." *Hernandez*, 500 U.S. at 365, 111 S.Ct. 1859 (citations omitted). Indeed, the Majority acknowledged:

> [A] trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal and will not be overturned unless clearly erroneous. Such great deference is necessary because a reviewing court, which analyzes only the transcripts from *voir dire*, is not as well positioned as the trial court is to make credibility determinations. Moreover, there will seldom be much evidence on the decisive question of whether the race-neutral explanation for a peremptory challenge should be believed; the best evidence often will be the demeanor of the prosecutor who exercises the challenge.

Majority Opinion at 974 (quoting *Commonwealth v. Williams*, 602 Pa. 360, 980 A.2d 510, 531 (2009) (internal quotation marks and citations omitted)). As our Supreme Court observed, "Such great deference is appropriate and warranted because the trial court, having viewed the demeanor and heard the tone of voice of the attorney exercising the challenge, is uniquely positioned to make credibility determinations." *Roney*, 79 A.3d at 619 (citing *Williams*, 980 A.2d at 531). *See also Foster v. Chatman*, —— U.S. ——, 136 S.Ct. 1737, 1747, 195 L.Ed.2d 1 (2016) (quoting *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008) ("in absence of exceptional circumstances, 'we defer to state court factual findings unless we conclude they are clearly erroneous.' ")); *Hernandez*, 500 U.S. at 366, 111 S.Ct. 1859 ("in the absence of exceptional circumstances, we [should] defer to the [trial court's] factual findings.").

Despite such clear directives, the Majority does not do justice to the above standards. Indeed, the Majority ignores the deference owed to the trial court's decision on discriminatory intent and instead makes its own *findings* based on a cold record, reweighing the relevant circumstances to overturn the trial court's finding regarding Juror 67.

Contrary to the trial judge who observed the voir dire process, the Majority determined that three factors were strongly indicative of the prosecution's discriminatory intent: first, potential jurors were identified by race and gender on the peremptory strike sheet [ ("Strike Sheet"); second, statistics established that the Commonwealth struck a disproportionate number of African Americans; and third, the Commonwealth's explanation for striking Juror 67 was "wholly underpersuasive." Majority Opinion at 975. With due respect, I find this to be error by the Majority.

Regarding the peremptory Strike Sheet, it is undisputed it provided the race and

gender of potential jurors. However, the Majority overlooks—or at the very least, minimizes—the fact that the Commonwealth had no involvement in the preparation of the Strike Sheet or placement of any notations regarding race or gender. Indeed, it is clear, and acknowledged by the Majority, that the notations are attributable solely to the trial court's staff. *Id.* at 968. I do not understand how the Majority can impute discriminatory intent to the Commonwealth from the content of this document when the Commonwealth had no say or involvement in its drafting. Further, while the Majority finds the trial court staff's practice of notating the race and gender on the Strike Sheet ill-advised and inappropriate, but acknowledges that the inclusion of race and gender on the sheet is not discriminatory *per se*, *id.* at 971–72, the Majority fails to explain how—or even *if*—the Commonwealth misused the information. I too fail to see how this information was misused, or for that matter ill-advised, especially when Appellant was required to include this information in the record as a part of his *prima facia* showing, and this information discloses no more than what plainly can be observed of the venire panel during jury selection. As previously stated, had it not been for the trial court staff's notations on the Strike Sheet, the *prima facia* information required under *Hill* would be completely absent from the record in this case. Respectfully, I find the Majority's designation of the Strike Sheet as indicative of discriminatory intent as unfounded.

Regarding the second ground, the Majority offers statistics to establish that the Commonwealth struck a disproportionate number of African Americans. As the Majority acknowledged, statistics alone are not dispositive of the matter.

As our Supreme Court recognized in *Roney*,

[The] citation of statistics does not prove purposeful discrimination in jury selection cases. In [*Commonwealth v. Ligons*, 601 Pa. 103, 971 A.2d 1125, 1244 (Pa. 2009)], we held as follows: "While it is clear that the prosecutor peremptorily struck more African–Americans than Caucasians, this fact, in and of itself, is insufficient to demonstrate purposeful discrimination when considering the totality of the circumstances."

79 A.3d at 622. In its discussion of deference owed to the trial court's decision on discriminatory intent, the Court in *Roney* explained:

[G]reat deference is appropriate and warranted because the trial court, having viewed the demeanor and heard the tone of voice of the attorney exercising the challenge, is uniquely positioned to make credibility determinations. Although the demeanor of the attorney exercising the peremptory challenge is often the best evidence as to the question of discriminatory intent, the trial court should consider the totality of the circumstances before making its ruling. Other relevant evidence as to the ultimate question of whether the prosecutor exercised purposeful discrimination and acted with discriminatory intent includes the following: the final composition of the jury, the race or gender sensitivity of the case, and any questionable remarks made by the prosecutor during jury selection. *See Williams, supra* at 532; *Commonwealth v. Ligons*, 601 Pa. 103, 971 A.2d 1125, 1144 (2009); [*Commonwealth v. Cook*, 597 Pa. 572, 952 A.2d 594, 608 (Pa. 2008); *Commonwealth v. Spotz*, 587 Pa. 1, 896 A.2d 1191, 1212–14 (Pa. 2006)].

*Id.* at 619 (some citations omitted).[5]

The Majority recognized that statistics *alone* are not sufficient to prove discriminatory intent but can be considered in the totality of circumstances to determine whether the Commonwealth exercised its strikes in a discriminatory manner. *Id.* at 975–76 (citing *Ligons,* 971 A.2d at 1144).[6] Here, the Majority notes that thirty potential jurors were considered by the parties, thirteen of whom were African American, fourteen of whom were Caucasian, and three of whom were "Other," *i.e.*, neither African American nor Caucasian. Majority Opinion at 975–76. Seven of the Commonwealth's peremptory strikes were used on African Americans and one was used on a person considered "Other." The Commonwealth did not strike any Caucasians. *Id.* at 975–76.

The Majority determined, "The statistics in this case are startling. Unlike many cases addressed by our Supreme Court, in this case the Commonwealth exercised all eight of its peremptory strikes on racial minorities and seven of those eight on African–Americans." *Id.* The Majority concluded:

> Although the Commonwealth could not completely purge the jury in this case of African–Americans because of the number of African–American members of the venire, the Commonwealth greatly reduced the number of African–Americans on the jury in this case by exercising all of its peremptory strikes and using seven of those eight strikes on

African–Americans. These probabilities, combined with the identification of the potential jurors' races and genders on the peremptory strike sheet and the proffered, but highly implausible, race-neutral explanation for striking Juror 67, cause us to conclude that Appellant met his burden in demonstrating that the Commonwealth struck Juror 67 with discriminatory intent.

*Id.* at 976.

I take issue with the Majority's conclusions on several levels. Most important, as is common, reliance upon statistics can be misleading. Here, the Majority's conclusion that "the probability of striking no Caucasians and striking at least 7 of 13 African–Americans by random chance is extremely small," Majority Opinion at 975, completely omits the reasons for which these potential jurors were stricken, thus leaving a false impression as to why these strikes were exercised. While the Commonwealth did strike seven African Americans, Appellant did not assert *Batson* challenges with regard to three of the African Americans or the "Other" venireperson. Appellant used his peremptory strikes on one African American, six Caucasians, and one "Other." As a result, the jury ultimately empaneled included five African Americans, seven Caucasians, and one "Other." *See* Strike List 10/28/14.

As important, a review of the Strike List reveals that the Commonwealth accepted six of the first eight African Americans on the panel. This is particularly telling and

---

**5.** While information is available here concerning the final composition of the jury, *see infra,* there is no suggestion in the record of any particular racial sensitivity of the case, nor is there any reference to questionable remarks made by the prosecutor during jury selection.

**6.** The Majority certainly will contend that there are two other bases for its conclusions,

namely, the Strike Sheet and the explanation for striking Juror 67. In the end, however, the statistical ground is the only one that could conceivably lend support to the Majority's conclusions because it would be improper to penalize the Commonwealth for something it did not do or, as noted below, to substitute our judgment for that of the trial court simply because we do not like the outcome.

compelling in light of the fact the venirepersons were brought into the courtroom for voir dire in two groups, the first comprised of fifty prospective jurors and the second comprised of forty. After the trial court conducted group voir dire for the first fifty, asking whether the prospective jurors knew any of the parties, witnesses, etc., the trial court reduced that group of fifty to nineteen. N.T., Voir Dire Proceedings, 10/28/14, at 10–18. From that first group of fifty, only the nineteen remaining venirepersons have their race and gender indicated on the Strike List.

Voir dire continued for the nineteen prospective jurors. Of the nineteen, four Caucasians, one African American, and one "Other" are noted as stricken by the trial court, leaving thirteen in that first group. Four of the thirteen were Caucasian, eight were African American, and one was "Other." The Commonwealth struck two African Americans while Appellant struck three Caucasians, one African American, and one "Other." *See* Strike List, 10/28/14, at 1–2 (unnumbered). I note that both the African American and the "Other" stricken by Appellant were acceptable to the Commonwealth. *Id.* The remaining six from the first group who were ultimately seated on the jury included five African Americans and one Caucasian. *Id.* These "statistics" belie the Majority's suggestion that the Commonwealth was attempting to "purge the jury" (Majority Opinion at 976) of African Americans and highlights once again the impropriety of this Court attempting to substitute its judgment for that of the trial court.

Further, I disagree with the Majority's conclusion that "Appellant met his burden in demonstrating that the Commonwealth struck Juror 67 with discriminatory intent." Majority Opinion at 976. When questioned, the Commonwealth offered the following explanation for striking Juror 67:

[W]hen she was being questioned by Your Honor, she was leaning back, seemed a little cavalier, had her arm resting on the back and while we were conducting *voir dire* in the back, she was sitting there with her arms crossed and her head kind of nodded, seemed guarded and again as if she didn't want to be here, so I didn't think she would be a fair and competent juror.

N.T., Voir Dire Proceedings, 10/28/14, at 94. The trial judge then stated, "Okay. Those are also neutral reasons for the Commonwealth exercising those strikes, *Batson* challenge is denied." *Id.* Appellant's counsel responded, "Thank you." *Id.* Appellant did not mention Juror 67 in his brief, except in the quoted excerpt from the voir dire proceedings. Appellant further does not present any argument with respect to the race-neutral explanation offered by the Commonwealth regarding Juror 67 and does not present any statistics whatsoever regarding the composition of the venire or the jury empaneled.

As the record reflects, once the Commonwealth disclosed its reasons for striking Juror 67, the trial court did not hesitate to grant the strike. Appellant's counsel did not object and the trial court seemingly did not find it necessary to add its own explanation on the record for granting the strike. It would appear, therefore, the trial court agreed with the Commonwealth's description of Juror 67's attitude, body language, and demeanor. It is not for this Court to speculate otherwise.

The argument Appellant advances in support of his *Batson* challenge includes testimony quoted from the voir dire proceedings, case law analyzing *Batson*, and a request that this Court view the prosecutor's reasons for striking African American

jurors in light of *Foster, supra.*[7] Appellant's Brief at 13–15. In essence, Appellant's entire "argument" consists of one phrase, *i.e.*, that the Commonwealth "systematically attempt[ed] to strike African–American jurors, even the African–Americans with neutral answers on their Juror Information Questionnaire, . . . to empanel a jury that would, in theory, find against Appellant who was an African–American." Appellant's Brief at 12.[8]

By contrast, the Majority's detailed analysis of statistical information alone spans three pages of its opinion. In undertaking this analysis, it appears the Majority acted as Appellant's counsel articulating a cogent argument, complete with statistical information not even mentioned by Appellant. This is not our role. *See, e.g., Commonwealth v. Morales*, 622 Pa. 352, 80 A.3d 1177, 1179 (2013) (*per curiam*) (citing *MacGregor v. Mediq, Inc.*, 395 Pa.Super. 221, 576 A.2d 1123, 1128 (1990) (improper for court to act as an advocate)); *see also Commonwealth v. Walls*, 481 Pa. 1, 391 A.2d 1064, 1066 (1978) (Manderino, J., dissenting) (neither trial court not appellate court should act as advocate).

Further, the Majority, substituting its judgment for that of the trial court, finds that the Commonwealth's explanation for striking Juror 67 is "wholly unpersuasive," the third factor it cites as evidencing discriminatory intent. Majority Opinion at 975. If the explanation was credible, the Majority suggests, essentially there would be no jurors to select for jury duty because only a few (if any) want to sit on a jury. The trial court acknowledged that much, and the Majority eagerly noted it. *See id.* at 976. Thus, according to the Majority, while the trial court erroneously concluded the Commonwealth did not engage in discriminatory conduct, the trial court was correct in finding that people generally do not want to serve on a jury. Again, it is not our role to choose what to believe. Our role is to determine whether the credibility determination was clearly erroneous, not to make the credibility determination itself. I do note however, that the Majority, in finding discriminatory intent, dismisses all of the Commonwealth's observations regarding Juror 67's demeanor in light of the trial court inviting potential jurors to sit back and relax. Majority Opinion at 976. However, there is no indication or even any suggestion that all or other jurors were so blatantly bothered with being there as Juror 67.

This Court discussed and rejected a substantially similar *Batson* challenge to demeanor in *Commonwealth v. Jackson*, 386 Pa.Super. 29, 562 A.2d 338 (1989) (*en banc*), a case I find instructive with respect to Juror 67. In *Jackson*, the following-

7. I note that *Foster* is distinguishable from Appellant's case in several respects. In *Foster*, the challenge centered on two African–American jurors. The prosecution offered facially race-neutral bases for striking them. However, documents from the prosecution's files revealed that both were on a "Definite NO's" list. The Supreme Court also concluded that reasons offered by the prosecution for striking the two jurors applied as well to otherwise-similar Caucasian panelists who were permitted to serve. Further, the reasons for striking one of the jurors shifted over time. The Court held that the record belied the prosecutor's assertions and found the strikes were motivated in substantial part by discriminatory intent. *Foster*, 136 S.Ct. at 1748–1754. Viewing Appellant's case in light of *Foster*, as he requests, would not provide any basis for disturbing the trial court's determinations regarding the jurors at the center of Appellant's *Batson* challenge, including Juror 67.

8. Although Appellant's argument on the *Batson* challenge covers slightly more than three pages of his brief, the argument consists merely of citations and quotations with analysis of the cited cases rather than argument supporting of a finding of discriminatory intent under the facts of this case.

ing exchange took place between the prosecutor and the trial court:

> **Prosecutor:** I exercised a peremptory challenge on one person who, it was basically what you would call body language. I can recall it was individual questioning of the jurors. They would come and sit in the jury box[.] I believe he had dark glasses on, and he was kind of sitting with his arm draped over, and I just got very negative feelings during my questioning of this individual. And even during [defense counsel's] questioning of him. Call it body language, if you will.
>
> **Trial Court:** You are indicating, for the record, you are slumped to the left side with your arm draped over the railing of the witness-box.
>
> **Prosecutor:** Correct.

*Id.* at 351.

The trial court accepted the prosecution's explanation as race neutral. This Court did not disturb that ruling on appeal. In announcing the judgment of the Court, Judge Beck explained:

> Appellant contends that a prosecutor's impression of a prospective juror's demeanor is not a proper reason for exercising a peremptory challenge. We do not agree. The manner in which a venireperson dresses, his facial expressions, his tone of voice, and his posture all provide relevant information concerning his attitude toward the court system and his ability to serve as a fair and impartial juror. Both district attorneys and defense counsel routinely base their trial selection strategy in part on such physical cues. In this case, the prosecutor noted for the record those aspects of [the juror's] conduct which called into question his willingness to be serious

and attentive throughout the trial. We find that the prosecutor's explanation for striking [the juror] was legally sufficient. *Cf. United States v. Garrison*, 849 F.2d 103, 106 (4th Cir. 1988), *cert. denied*, 488 U.S. 996, 109 S.Ct. 566, 102 L.Ed.2d 591 (1988) (prosecutor may strike individual perceived as inattentive); *United States v. Forbes*, 816 F.2d 1006, 1009 (5th Cir. 1987) (prosecutor may strike individual perceived as hostile).

> We recognize that a reference to a prospective juror's "body language" may mask a decision to exercise a peremptory challenge solely on the basis of race. A trial judge should not uncritically accept this or any other proffered explanation for a peremptory challenge. Instead, the judge should assess each proffered explanation in light of her independent recollection of the demeanor and responses of the venire panel members. As an appellate court, we must ordinarily defer to the trial court's evaluation since the trial judge had a direct opportunity to observe the voir dire process. Accordingly, we will accept the prosecutor's statement as an accurate summary of his reasons for striking this particular prospective juror.

*Id. See also Commonwealth v. Smulsky*, 415 Pa.Super. 461, 609 A.2d 843, 846 (1992) (trial court did not abuse its discretion by denying objection Commonwealth's peremptory exclusion of juror thought to be disingenuous and detached from the outside world).

The similarities between the demeanor descriptions in *Jackson* and here are striking. As Judge Beck aptly noted regarding the importance of demeanor in *Jackson*, dress, facial expressions, and posture all provide relevant information.[9] One must

---

9. Although I clearly acknowledge that the quoted excerpts from *Jackson* are from Judge

Beck's opinion announcing the judgment of the Court, the Majority reiterates that *Jackson*

recognize that voir dire many times provides precious little time and opportunity for counsel to assess the whole of a potential juror. Counsel nonetheless must quickly arrive at an educated judgment as to each potential juror's ability to focus, understand, follow instructions, and act impartially and without bias when considering the evidence to be presented during trial. In this case, there were thirty potential jurors in the venire panel after group voir dire. While experts might spend countless hours studying selection factors, that luxury, except in rare cases, is not afforded counsel during the voir dire process. Therefore, small but significant clues that might provide insight into a potential juror take on heightened importance in jury selection. Demeanor may be an important clue providing insight into a potential juror. I believe the Commonwealth engaged in just such an exercise in assessing Juror 67, just as in *Jackson*.[10]

In dismissing reliance upon *Jackson*, the Majority finds instructive, as binding precedent, the Supreme Court of the United States' decision in *Snyder v. Louisiana*, 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008), to emphasize the importance of the record demonstrating that the trial court in fact witnessed the alleged demeanor relied upon by a prosecutor to strike a juror, something it finds lacking in this case. Majority Opinion at 977–78. The Majority finds my argument therefore flawed, because I cite nothing in the record to indicate the trial court observed

---

is not binding on this Court. Majority Opinion at 976 n. 21. While I do not dispute the lack of binding authority, I maintain that *Jackson* is instructive and provides a proper framework for addressing the issue of juror demeanor as a basis for exercising peremptory strikes. Likewise, while also not binding on this Court, courts from other jurisdictions have employed a similar analysis. For example, in *Green v. Travis*, 414 F.3d 288 (2d Cir. 2005), the Second Circuit noted:

[T]he unfavorable demeanor of a venireperson has been held to be a race-neutral explanation for a peremptory challenge. *See, e.g., McCrory v. Henderson*, 82 F.3d 1243, 1247–48 (2d Cir. 1996) (noting that peremptory challenges "may legitimately be based not only on answers given by the prospective juror to questions posed on *voir dire*, but also on the prosecutor's observations of the prospective juror"); *Brown v. Kelly*, 973 F.2d 116, 121 121 (2d Cir. 1992) ("An impression of the conduct and demeanor of a prospective juror during the *voir dire* may provide a legitimate basis for the exercise of a peremptory challenge." *Id.* at 300. Similarly, the Fifth Circuit has routinely found demeanor to be a race-neutral justification. *See United States v. Thompson*, 735 F.3d 291, 297 n. 14 (5th Cir. 2013), and cases cited therein.

**10.** The Majority suggests that *Jackson* did not address the third step of *Batson* except with

respect to venirepersons challenged due to familiarity with the location of the crime. Majority Opinion at 978. The Majority's reading of *Jackson* intimates that both the trial court and this Court considered only that single aspect of the *Batson* challenge while leaving challenges based on demeanor unresolved. I respectfully disagree. Initially, the Court stated:

If a defendant makes a prima facie showing of discrimination, the burden then shifts to the prosecution to justify his decision to strike minority jurors. "The prosecutor must therefore articulate a neutral explanation related to the particular case to be tried." *Batson*, 476 U.S. at 98, 106 S.Ct. at 1724 (footnote omitted). **The trial judge must then make the ultimate determination of whether the defendant has established purposeful discrimination.** *Id.*

*Jackson*, 562 A.2d at 344 (emphasis added). After conducting its analysis, the Court concluded by indicating:

In summary, the trial judge found that appellant established a prima facie case of discrimination. This finding was not an abuse of discretion. **The trial judge also found that the Commonwealth rebutted this prima facie case of discrimination.** This finding was also not an abuse of discretion. Therefore, appellant's *Batson* challenge is not meritorious.

*Id.* at 354 (emphasis added).

Juror 67 and found that this juror's demeanor credibly exhibited the basis for the strike attributed to her by the Commonwealth. *Id.* at 977–78. I certainly take no issue with the Majority pointing out any omission to acknowledge binding precedent, except in this instance, where the proposition for which the Majority cites *Snyder* was expressly rejected by the United States Supreme Court in *Thaler v. Haynes*, 559 U.S. 43, 130 S.Ct. 1171, 175 L.Ed.2d 1003 (2010) (*per curiam*). In *Thaler*, the Court dismissed the misconception that *Snyder* established that a judge must reject a demeanor-based explanation for a peremptory challenge unless the judge personally observed and recalled the aspect of the juror's demeanor on which the explanation was based. The Court stated:

> This case presents the question whether any decision of this Court "clearly establishes" that a judge, in ruling on an objection to a peremptory challenge under *Batson v. Kentucky*, 476 U.S. 79 [106 S.Ct. 1712, 90 L.Ed.2d 69] (1986), must reject a demeanor-based explanation for the challenge unless the judge personally observed and recalls the aspect of the prospective juror's demeanor on which the explanation is based. The Court of Appeals appears to have concluded that either *Batson* itself or *Snyder* v. *Louisiana*, 552 U.S. 472 [128 S.Ct. 1203, 170 L.Ed.2d 175] (2008), clearly established such a rule, but the Court of Appeals read far too much into those decisions, and its holding, if allowed to stand, would have important implications. We therefore grant the petition for certiorari, grant respondent's motion to proceed *in forma pauperis*, and reverse the judgment of the Court of Appeals.

*Id.* at 44, 130 S.Ct. 1171. Further:

> In holding that respondent is entitled to a new trial, the Court of Appeals cited two decisions of this Court, Batson *and* Snyder, but neither of these cases held that a demeanor-based explanation for a peremptory challenge must be rejected unless the judge personally observed and recalls the relevant aspect of the prospective juror's demeanor.
>
> The Court of Appeals appears to have concluded that *Batson* supports its decision because *Batson* requires a judge ruling on an objection to a peremptory challenge to " 'undertake "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." ' " [*Haynes v. Quarterman*] 561 F.3d [535] at 540 [ (5th Cir. 2009) ] (quoting *Batson*, 476 U.S. at 93 [106 S.Ct. 1712], in turn quoting *Arlington Heights* v. *Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 [97 S.Ct. 555, 50 L.Ed.2d 450] (1977)). This general requirement, however, did not clearly establish the rule on which the Court of Appeals' decision rests. *Batson* noted the need for a judge ruling on an objection to a peremptory challenge to "tak[e] into account all possible explanatory factors in the particular case," 476 U.S. at 95 [106 S.Ct. 1712] (internal quotation marks omitted). See also *Miller–El* v. *Dretke*, 545 U.S. 231, 239 [125 S.Ct. 2317, 162 L.Ed.2d 196] (2005); *Johnson* v. *California*, 545 U.S. 162, 170 [125 S.Ct. 2410, 162 L.Ed.2d 129] (2005). Thus, where the explanation for a peremptory challenge is based on a prospective juror's demeanor, the judge should take into account, among other things, any observations of the juror that the judge was able to make during the *voir dire*. But *Batson* plainly did not go further and hold that a demeanor-based explanation must be rejected if the judge did not observe or cannot recall the juror's demeanor.

Nor did we establish such a rule in *Snyder*. In that case, the judge who presided over the *voir dire* also ruled on the *Batson* objections, and thus we had no occasion to consider how *Batson* applies when different judges preside over these two stages of the jury selection process. *Snyder*, 552 U.S. at 475–478 [128 S.Ct. 1203]. The part of *Snyder* on which the Court of Appeals relied concerned a very different problem. The prosecutor in that case asserted that he had exercised a peremptory challenge for two reasons, one of which was based on demeanor (*i.e.*, that the juror had appeared to be nervous), and the trial judge overruled the *Batson* objection without explanation. 552 U.S. at 478–479 [128 S.Ct. 1203]. We concluded that the record refuted the explanation that was not based on demeanor and, in light of the particular circumstances of the case, we held that the peremptory challenge could not be sustained on the demeanor-based ground, which might not have figured in the trial judge's unexplained ruling. *Id.* at 479–486 [128 S.Ct. 1203]. Nothing in this analysis supports the blanket rule on which the decision below appears to rest.

The opinion in *Snyder* did note that when the explanation for a peremptory challenge "invoke[s] a juror's demeanor," the trial judge's "first hand observations" are of great importance. *Id.* at 477 [128 S.Ct. 1203]. And in explaining why we could not assume that the trial judge had credited the claim that the juror was nervous, we noted that, because the peremptory challenge was not exercised until some time after the juror was questioned, the trial judge might not have recalled the juror's demeanor. *Id.* at 479 [128 S.Ct. 1203]. These observations do not suggest that, in the absence of a personal recollection of the juror's demeanor, the judge could not have ac-

cepted the prosecutor's explanation. Indeed, *Snyder* quoted the observation in *Hernandez v. New York*, 500 U.S. 352, 365 [111 S.Ct. 1859, 114 L.Ed.2d 395] (1991) (plurality opinion), that the best evidence of the intent of the attorney exercising a strike is often that attorney's demeanor. *See* 552 U.S. at 477 [128 S.Ct. 1203].

*Id.* at 47–49, 130 S.Ct. 1171 (footnote omitted).

Here, there is no suggestion that the trial judge in the case before us was unable to make firsthand observations of the jurors' demeanors, and in particular Juror 67, or the demeanor of the attorney exercising the peremptory strikes, bolstering the deference due the trial court's findings. The trial court was present for and actually conducted voir dire. Upon conclusion of the jury selection process, the trial court addressed Appellant's *Batson* challenges and determined the Commonwealth presented race neutral reasons for exercising those strikes. N.T., Voir Dire Proceedings, 10/28/14, at 90–94. There is nothing in the record to suggest that the trial court did *not* have the opportunity to observe Juror 67. Importantly, as reflected in the above excerpt, *Thaler* clarified that it is not imperative that the trial judge personally observe and recall the juror's demeanor in order to accept the prosecutor's explanation.

Given the record and our standard of review, I conclude that Appellant failed to meet his burden of proving the Commonwealth engaged in purposeful discrimination in striking Juror 67. Further, recognizing the trial court had the opportunity to observe the voir dire process whereas we are limited to a review of a cold record, and further recognizing the deference due the trial court's evaluation, I find no basis for disturbing the trial court's denial of

Appellant's *Batson* challenge. Therefore, I dissent.